# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GILBERT MCKNIGHT, | ) | 1:10-cv-00108 SKO |
| | ) | |
| Plaintiff, | ) ) | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | ) ) | (Doc. 18) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) ) | |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Title II and XVI of the Social Security Act. 42 U.S.C. §§ 401 *et seq*. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## FACTUAL BACKGROUND

Plaintiff was born in 1958 and previously worked as a plumber. (Administrative Record ("AR") 111, 22, 24, 36, 46.) Plaintiff has been arrested at least 30 times for charges including drug

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 9, 10.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

abuse, burglary and assault, and has been incarcerated off and on for over 20 years. (AR 195-96.) He was most recently released from custody on August 15, 2003. (AR 46.)

Prior to the current applications for benefits, Plaintiff filed another application for DIB and SSI on August 19, 2003. (AR 11, 45.) This application was denied following a hearing on October 27, 2005. (AR 11.) The ALJ in that action found Plaintiff to have severe impairments including lumbar spine degenerative disc disease, right knee degenerative joint disease, hepatitis C, depressive disorder, and an organic mental disorder; however, he found that these impairments did not meet a listing under Appendix 1, Subpart P, Regulation No. 4. The ALJ determined Plaintiff had the residual functional capacity ("RFC")[2] to lift/carry 50 pounds occasionally and 25 pounds frequently, to sit/stand/walk for six hours in an eight-hour workday, with no restrictions in activities of daily living, mild difficulties maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. Therefore, the ALJ concluded Plaintiff could perform medium work, and found Plaintiff not disabled. (AR 52-53.)

Plaintiff filed the current application for DIB and SSI on August 2, 2006. (AR 106-15.) Plaintiff believes his ability to work is currently limited by a head injury which resulted in memory loss, level 3 hepatitis C, liver problems, and arthritis in his shoulders, knees, hands, elbows, right hip and back. (AR 124.)

**A.     Medical Evidence**

Plaintiff began seeking treatment for pain in his hands, back, and knee and was seen at Community Medical Centers and the Stanislaus County Health Services Agency on an ongoing basis. (AR 174-83, 236-60, 261-73.)

On July 20, 2006, Plaintiff was seen at Community Medical Centers. (AR 176.) Plaintiff was seeking a refill on his Oxycontin prescription due to his back and knee pain. (AR 176.) The

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

doctor indicated that Plaintiff was using twice the amount of medication he had been prescribed and switched Plaintiff to Methadone which had a lower abuse potential. (AR 176.)

On October 11, 2006, Plaintiff was examined by Dr. Miguel Hernandez, a state agency physician. (AR 189-93.) Dr. Hernandez indicated that Plaintiff walked with a limp, had decreased range of motion in his right knee with slight swelling and mild effusion,[3] and experienced tenderness to palpation over the right knee. (AR 190-91.) Dr. Hernandez determined that Plaintiff had hepatitis C, right knee osteoarthritis, and chronic low back pain due to suspected degenerative disc disease; however, it was noted that this condition appeared to be stable. (AR 192.) Dr. Hernandez made general findings that "[t]he [Plaintiff] had good generalized muscle tone throughout both upper and lower extremities bilaterally." (AR 192.) Additionally, he found Plaintiff's motor strength was 5/5, and he was able to achieve about 60 pounds of pressure during a grip strength test. (AR 192.) Dr. Hernandez opined that Plaintiff had the RFC to stand/walk six hours in an eight-hour work day with 15-30 minute breaks every two hours due to chronic low back pain, and to lift and carry 20 pounds occasionally and 10 pounds frequently. (AR 192-93.) Dr. Hernandez's RFC also included unspecified postural limitations to bending, stooping, crouching, climbing, kneeling, balancing, crawling, and pulling, especially in a repetitive manner, due to low back pain and right knee osteoarthritis. (AR 192-93.)

On October 22, 2006, Plaintiff was examined by Dr. James Scaramozzino, a state agency psychiatrist. (AR 194-99.) Dr. Scaramozzino noted signs of depression and personality disorder but concluded that these symptoms were mild and did not impair Plaintiff's ability to work. (AR 198-99.)

On November 22, 2006, Dr. E. E. Wong, a state agency non-examining physician, reviewed Plaintiff's file. (AR 200-05.) Dr. Wong concluded that Plaintiff's condition had not materially changed from the time of the prior decision. (AR 202.) Therefore, Dr. Wong adopted the RFC of the ALJ in the previous action. (AR 202.) He found that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, stand/walk six hours in an eight-hour work day, and sit six

---

[3] Effusion denotes the escape of fluid into a tissue. *Dorland's Illustrated Medical Dictionary* 603 (31st ed. 2007).

3

1  hours in an eight-hour work day. (AR 200-05.) Dr. Wong's RFC contained no postural limitations.
2  (AR 200-05.) He explained that he disagreed with Dr. Hernandez's opinion regarding the length
3  and frequency of breaks Plaintiff would require, as well as his postural limitation findings, because
4  they were not supported by the facts that: (1) the Plaintiff was in no acute distress at the consultative
5  evaluation, (2) he used no assistive devices, (3) he had normal range of motion in his hip, and (4) the
6  sensory evaluation was normal. (AR 205.)

7  On November 22, 2006, state agency non-examining psychiatrist, Dr. G. F. Johnson, also
8  reviewed Plaintiff's file. (AR 208-21.) He concluded that, because of his personality disorder,
9  Plaintiff would have moderate difficulty functioning in a work environment. (AR 216.)

10  On August 21, 2007, Plaintiff had x-rays taken of his right knee. (AR 270.) Those x-rays
11  showed "moderate tricompartmental degenerative osteoarthritis with joint space narrowing and
12  articular spurring." (AR 207.) The doctor suspected there may be "a tiny intraarticular loose body."
13  (AR 270.) On a follow up visit to the Stanislaus County Health Services Agency ("SCHSA") on
14  August 27, 2007, it was noted that Plaintiff was "still having pain behind [his right] knee" but the
15  pain was slightly improved. (AR 268.) The treatment notes also indicate that Plaintiff had normal
16  strength in his knee. (AR 268.)

17  On September 26, 2007, Plaintiff was again seen at SCHSA. (AR 267.) The primary reason
18  for the visit was a gallstone problem unrelated to this action; however, it was noted that Plaintiff was
19  having pain in his thumb, shoulder, and knee. (AR 267.) The doctor indicated that Plaintiff might
20  benefit from cortisone injections and referred Plaintiff to a clinic which provides that treatment.
21  (AR 267.)

22  On November 1, 2007, Plaintiff was again examined at SCHSA. (AR 262.) Plaintiff
23  complained of shoulder, knee, and hip pain. (AR 262.) The doctor noted that Plaintiff was
24  requesting Oxycontin. (AR 262.) In examining Plaintiff's shoulder, the doctor found no deformity
25  and indicated a strength level of 5/5. (AR 262.) Because there was no recent x-ray of Plaintiff's
26  shoulder, the doctor ordered one. (AR 262.) The doctor noted that Plaintiff was still drinking
27  occasionally and therefore could not be given a prescription to treat his hepatitis C. (AR 262.)
28

On November 14, 2007, Plaintiff had x-rays taken of his right shoulder. (AR 264.) Those x-rays showed (1) "degenerative changes in the glenohumeral joint with joint space narrowing and marginal spurring," (2) "mild degenerative changes in the acromioclavicular joint but only with minor inferior marginal spurring," (3) "no rotator cuff calcifications," and (4) "no recent or past fracture deformity." (AR 264.)

On January 8, 2008, Plaintiff was seen at SCHSA. (AR 261.) Plaintiff complained of leg and shoulder pain. (AR 261.) The doctor indicated that Plaintiff needed to follow up with his primary care physician in order to be placed on a pain management regimen. (AR 261.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration. (AR 58, 59, 66, 67.) Consequently, on May 14, 2007, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 83.) A hearing was held February 19, 2008, before ALJ Sandra K. Rogers. (AR 20-41.)

**1.    Vocational Expert's Testimony**

Susan T. Moranda, a vocational expert ("VE"), testified that Plaintiff's past relevant work as a plumber is a skilled[4] position requiring a medium[5] to heavy[6] exertion level. (AR 37.) Ms. Moranda testified that a hypothetical person of Plaintiff's age, education, and work experience who could lift 50 pounds occasionally, 25 pounds frequently, stand or sit for six hours in an eight-hour day, would not be able to perform the work required as a plumber. (AR 37.) The VE testified that Plaintiff did not have skills which could be directly transferable to a related profession because it had been six years since Plaintiff had worked as a plumber, and the VE was unsure whether

---

[4] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.964(c).

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[6] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work." 20 C.F.R. §§ 404.1567(d), 416.967(d).

advances in the plumbing industry would require Plaintiff to undergo retraining. (AR 38.) The VE further testified that there were other jobs in the national economy that could be performed given the same hypothetical person's limitations, including a hand packager[7] or cashier.[8] (AR 39.)

### 2. ALJ's Decision

On May 28, 2008, the ALJ issued a decision that found Plaintiff not disabled from October 28, 2005, through the date of the decision. (AR 8-19.) The ALJ explained that res judicata bars any inquiry into facts already adjudicated by the previous decision, and further requires a presumption of continued non-disability unless Plaintiff's circumstances have materially changed. (AR 11.) The ALJ determined that Plaintiff's condition had remained materially the same until November 13, 2007, when an x-ray revealed Plaintiff suffered from the new condition of osteoarthritis of his right shoulder. (AR 11.) However, the ALJ found that this new impairment did not preclude Plaintiff from working. (AR 11.) Due to the apparent improvement in Plaintiff's symptoms relating to depression and organic mental disorder, the ALJ determined that Plaintiff actually had fewer limitations now than he was experiencing at the time of the prior action. (AR 11.) Ultimately, the ALJ found that Plaintiff (1) meets the insured status requirements of the Social Security Act through December 31, 2006, (2) has not engaged in substantial gainful activity since October 28, 2005, the day after the prior ALJ's decision, (3) has three severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee, and hepatitis C, (4) does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and (5) has an RFC which allows him to perform medium work available in the national economy. (AR 14-15.)

The ALJ gave less weight to the examining opinion of Dr. Hernandez, stating that it was not consistent with Plaintiff's treatment records and other substantial evidence of record. (AR 17.) The ALJ also stated that Dr. Hernandez's minimal findings on examination and the degree of treatment offered by the treating doctors do not support such a limited residual functional capacity. (AR 17.)

---

[7] According to the VE, the profession of hand packager requires medium exertion.

[8] According to the VE, the profession of cashier requires light to medium exertion.

6

On May 28, 2008, Plaintiff sought review of this decision before the Appeals Council. (AR 1-4.) The Appeals Council denied review on November 19, 2009. (AR 1-4.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**C.    Plaintiff's Appeal**

On January 20, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff seeks a reversal of the final decision of the Commissioner asserting that the ALJ failed to properly consider the medical evidence from treating and examining physicians.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## **DISCUSSION**

### A. The ALJ's Assessment of Dr. Hernandez's Examining Opinion

Plaintiff contends that the ALJ erred in giving little weight to Dr. Hernandez's opinion. The reasons given by the ALJ for discounting Dr. Hernandez's opinion were that it is not consistent with the claimant's treatment records and other substantial evidence of record, and Dr. Hernandez's minimal findings on examination and the degree of treatment offered by the treating doctors did not support his limited residual functional capacity determination. Conversely, the ALJ gave dispositive

weight to the opinion of Dr. Wong, the non-examining, consulting physician, because it was consistent with substantial evidence of record, including the objective findings on examination and the treatment records. (AR 17.)

### 1. Legal Standard

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be given more weight than opinions of doctors who did not treat the claimant, because treating physicians are employed to cure and, therefore, have a greater opportunity to know and observe the claimant. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). Opinions given by examining physicians are, in turn, generally given greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 750 F.2d 1450 (9th Cir. 1984). Where an examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the examining physician's ultimate conclusions. *Lester,* 81 F.3d at 830.

Despite the presumption of special weight afforded to treating or examining physicians' opinions, an ALJ may give less weight to an examining physician's opinion that conflicts with the medical evidence, if the ALJ provides specific and legitimate reasons for discounting the opinion. *See id*. at 830-31 ("[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."). The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). A non-examining physician's opinion alone, with nothing more, is not sufficient evidence to justify the rejection of an examining physician's opinion. *Lester*, 81 F.3d at 831 (citing *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456). However, the ALJ can reject the opinion of an examining physician based on the

testimony of a non-examining medical advisor <u>and</u> on substantial evidence in the record. *See, e.g.*, *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir 1995).

**2. Analysis**

**a. The ALJ did not Err in Discounting Dr. Hernandez's Opinion**

Dr. Hernandez is an examining physician, and as such, his opinion is generally entitled to greater weight than that of Dr. Wong, a non-examining physician. *Lester*, 81 F.3d at 830. However, Dr. Hernandez's opinion is controverted by the opinion of Dr. Wong. Whereas Dr. Hernandez believes Plaintiff is limited to standing/walking/sitting for six hours in an eight-hour work day with 15-30 minute breaks every two hours, lifting 20 pounds occasionally and 10 pounds frequently, and postural limitations, Dr. Wong believes Plaintiff can stand/walk/sit for about six hours in an eight-hour work day, lift 50 pounds occasionally and 25 pounds frequently, with no postural limitations. (AR 201-03). Because Dr. Hernandez's opinion is controverted, the ALJ must give specific and legitimate reasons supported by substantial evidence in the record for discounting it. *See Magallanes*, 881 F.2d at 751-55. As discussed further below, the Court finds that the ALJ has done so.

The reasons given by the ALJ for discounting Dr. Hernandez's opinion were that: (1) it was not consistent with Plaintiff's treatment records, and (2) Dr. Hernandez's objective findings on examination did not support Dr. Hernandez's limited RFC opinion.

Plaintiff argues that the treatment records are consistent with Dr. Hernandez's objective findings. Plaintiff explains that treating doctors found that: (1) Plaintiff has an antalgic gait and ambulates with a cane, (2) Plaintiff's hands show inflammatory changes, (3) Plaintiff has decreased range of motion in the bilateral shoulders, (4) Plaintiff has been diagnosed with hepatitis C, and (5) x-rays confirm osteoarthritis in the right shoulder and knee. (AR 183, 261, 264, 270.) Plaintiff claims that these facts are consistent with Dr. Hernandez's findings that Plaintiff walked with a limping gait, had decreased range of motion in the knee with slight swelling and mild effusion present, and had tenderness to palpation over the knee. Similarly, Plaintiff claims that his treatment

10

records are consistent with Dr. Hernandez's diagnosis opinion that Plaintiff suffers from chronic low back pain, suspected degenerative disc disease, hepatitis C, and right knee osteoarthritis.

The ALJ's first reason for discounting Dr. Hernandez's opinion was that it was "not consistent with the [Plaintiff's] treatment records and other weighty evidence of record." This reason to discount Dr. Hernandez lacks the requisite specificity. The ALJ has given no explanation which treatment records are inconsistent with Dr. Hernandez's opinion or specifically how they are inconsistent. While the Court finds that treatment records, which constitute substantial evidence, indicate mild objective findings (*see, e.g.,* AR 262, 268), the ALJ does not provide a specific explanation about how the treatment records are inconsistent with Dr. Hernandez's opinion. The Court cannot determine which treatment records are inconsistent with Dr. Hernandez's opinion in the first instance. *See Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) ("reviewing court can evaluate an agency's decision only on the grounds articulated by the agency").

While this particular reason for discrediting Dr. Hernandez's opinion lacked specificity, the ALJ's determination will be upheld as long as the ALJ provided some specific and legitimate reason which is supported by substantial evidence in the record. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (where ALJ provides a number of justifications for his decision, only one of which constitutes error, court must determine whether remaining legitimate justifications provide substantial evidence supporting the decision). The ALJ's second stated reason for discounting Dr. Hernandez's examining opinion was that Dr. Hernandez's objective findings were mild in nature and were inconsistent with his ultimate conclusion regarding Plaintiff's physical limitations. The fact that a physician relied on minimal objective findings in coming to his or her opinion is a proper reason for discounting the physician's opinion. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ need not accept the opinion of a doctor if it is inadequately supported by clinical findings); *Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995) (appropriate for an ALJ to consider the inconsistency of conclusions with the physician's own findings in rejecting physician's opinion).

1    Dr. Hernandez documented a number of objective findings; however, those findings were
2 minimal in the sense that they indicate mild limitations. For example, the language Dr. Hernandez
3 used when describing the findings was often qualified. Dr. Hernandez noted "*slight* swelling, and
4 *mild* effusion" as well as "*some* tenderness to palpation and *slight* fullness over the popliteal fossa."
5 (AR 191 (emphasis added).) Similarly, although Dr. Hernandez found degenerative disc disease,
6 he described Plaintiff's condition as "stable." (AR 192.) The ALJ stated that during examination,
7 Dr. Hernandez found that Plaintiff had "good generalized muscle tone throughout both his upper and
8 lower extremities" and "[h]is motor strength was normal." (AR 17.) According to Dr. Hernandez's
9 examination notes, Plaintiff's motor strength was 5/5, and Plaintiff was able to achieve about 60
10 pounds of pressure bilaterally in a grip strength test. (AR 192.)

11    The ALJ's characterization of Dr. Hernandez's objective medical findings as mild is
12 consistent with the overall treatment record. During Plaintiff's August 27, 2007, visit to SCHSA
13 it was noted that Plaintiff's knee pain was slightly improved and Plaintiff had normal strength in his
14 knee. (AR 268.) During his November 1, 2007, examination at the Stanislaus County Health
15 Services Agency, Plaintiff was noted as having a strength level of 5/5 in his shoulder. (AR 262.)
16 The Court finds that the ALJ's determination that Dr. Hernandez's mild objective findings did not
17 support his more limited and restrictive conclusion about Plaintiff's physical capabilities is
18 supported by substantial evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)
19 (where evidence before ALJ is subject to more than one rational interpretation, court must defer to
20 ALJ's conclusion). Therefore, the ALJ properly discounted Dr. Hernandez's opinion. *Tonapetyan*,
21 242 F.3d at 1149.

22 **B.    The ALJ did not Err in Crediting Dr. Wong's Medical Opinion**

23    "The opinion of a non-examining physician cannot by itself constitute substantial evidence
24 that justifies the rejection of the opinion of either an examining physician or a treating physician."
25 *Lester*, 81 F.3d at 831 (internal citation omitted). However, once an examining physician's opinion
26 is discounted, "[t]he opinions of non-treating or non-examining physicians may . . . serve as
27 substantial evidence [to support an ALJ's determination] when the opinions are consistent with
28 independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Plaintiff

claims that, due to the deference that should have been given to Dr. Hernandez, the ALJ's reliance on Dr. Wong's non-examining opinion was misplaced, and does not constitute the required substantial medical evidence needed to reject an examining opinion. However, because this Court has found that the ALJ properly discounted Dr. Hernandez's opinion, and because the ALJ found Dr. Wong's opinion to be more consistent with the overall medical evidence, the ALJ did not err in giving Dr. Wong's opinion greater weight.

Plaintiff cites *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) in support of his assertion that Dr. Wong's opinion, as a non-examining physician, is entitled to even less weight because it is contained in a "check the box" form. However, this case is distinguishable from *Crane*. In *Crane*, the ALJ "permissibly rejected [the medical opinions] because they were check-off reports that did not contain any explanation of the bases of their conclusions." *Id.* (citing *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983)). Here, although the form is a "check the box" type form, it allows space for the doctor to explain the basis for his conclusions – which Dr. Wong did. The form asks the doctor to "[e]xplain how and why the evidence supports [the doctor's] conclusions" and to "[c]ite the specific facts upon which [the doctor's] conclusions are based." (AR 201.) In response, Dr. Wong explained his findings by noting that, although Plaintiff walks with a limp, no assistive device is used.[9] (AR 201.) Additionally, Plaintiff has normal range of motion except decreased right knee flexion with slight swelling, and mild effusion. (AR 201.)

Dr. Wong noted that Plaintiff experienced only mild paralumbar tenderness, with normal strength and normal sensory examination results. (AR 201.) He concluded that there had been no significant material changes since the prior ALJ's determination and adopted the ALJ's RFC findings. He explained that the prior RFC was supported by objective evidence of MRIs and x-ray findings. Given that Dr. Wong provided a detailed explanation of the specific facts and evidence

---

[9] One subsequent treating record indicates that Plaintiff presented for an examination ambulating with a cane. (AR 261.) Dr. Wong did not consider this as his opinion was rendered prior to this treatment record. Nevertheless, as a whole, the medical records are consistent with Dr. Wong's opinion. Further, ambulation with a cane (without a doctor's recommendation based on objective findings) is not an objective medical finding in and of itself – it is an observation of the patient's presentation. The Court notes the ALJ specifically considered that medical records in 2006 indicated that Plaintiff was abusing Oxycontin (AR 175-77), and Plaintiff requested Oxycontin from an examiner in 2007 (AR 262). The ALJ concluded that Plaintiff was engaged in drug-seeking behaviors, and discredited his testimony in part for this reason. To the extent that the use of a cane was a subjective presentation by Plaintiff of his pain, Plaintiff's credibility was found lacking by the ALJ, and that determination was not challenged.

1  used in reaching his conclusion, *Crane's* holding is inapplicable.  Moreover, Dr. Wong's opinion
2  is consistent with the substantial medical evidence that indicates fairly mild objective findings. *See*
3  *Moore v. Astrue*, No. C. 07-1218 PJH, 2008 WL 2811983, at *8 (N.D. Cal. July 21, 2008)
4  (distinguishing *Crane* and finding reviewing physician's opinion creditable because it was
5  adequately supported by clinical findings).  The ALJ did not err by giving weight to Dr. Wong's
6  opinion.

7  **C.      Hypothetical Posed to the VE Accurately Described Plaintiff's Determined Limitations**
8  **as Supported by the Medical Record**

9  Plaintiff argues that "by failing to include Dr. Hernandez's limitations the ALJ failed to
10 propound a complete and accurate hypothetical to the vocational expert."  Because this Court has
11 found the ALJ did not err in discounting Dr. Hernandez's opinion, the ALJ did not err in failing to
12 include Dr. Hernandez's determined limitations in the hypothetical posed to the vocational expert.

13 It is appropriate for an ALJ to limit a hypothetical to only those restrictions which are
14 supported by substantial evidence in the record. *See Magallanes*, 881 F.2d at 756-57; *Embrey v.*
15 *Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (holding that hypothetical questions posed to the VE must
16 accurately include all Plaintiff's limitations).  Because the ALJ found Dr. Hernandez's RFC opinion
17 was not supported by the record or his own objective findings, it was proper for the ALJ not to
18 include those limitations in formulating his hypothetical to the VE.        In sum, the ALJ cited
19 specific and legitimate reasons supported by the record for giving less weight to Dr. Hernandez's
20 examining opinion and instead giving greater weight to the non-examining opinion of Dr. Wong
21 which was supported by substantial evidence.

22 ///
23 ///
24 ///
25 ///
26 ///
27 **///**
28 **///**

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Gilbert McKnight.

IT IS SO ORDERED.

**Dated:   July 14, 2011**                              **/s/ Sheila K. Oberto**
                                                                           UNITED STATES MAGISTRATE JUDGE